**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sandra Lynn Traub,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-02027-PHX-GMS<br><br>**ORDER** |

Plaintiff Sandra Lynn Traub seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence, the Commissioner's decision is affirmed.

## BACKGROUND

Plaintiff was born in February 1975. Plaintiff has at least a high school education. She previously worked as a dental assistant.

Plaintiff previously filed for disability and disability insurance benefits on May 26, 2016, alleging disability beginning September 30, 2014. Her claim was denied initially and upon reconsideration. Plaintiff appeared and testified at a hearing on March 8, 2019.

A vocational expert also testified. That application was denied by an Administrative Law Judge ("ALJ") on May 22, 2019 (the "Prior Decision"). The Prior Decision remains final and binding and res judicata applied for the period through May 22, 2019. (Doc. 12-4 at 5.) Plaintiff was found not disabled in the Prior Decision because her residual functional capacity allowed her to perform the requirements of her past relevant work as a dental assistant. (AR at 16.)

On August 21, 2019, Plaintiff again applied for disability and disability insurance benefits, alleging disability beginning May 23, 2019. On February 22, 2021, a hearing was held. Plaintiff appeared with her attorney and testified at the hearing before the ALJ. A vocational expert also testified. During the hearing, Plaintiff amended the onset date to September 23, 2019. (Doc. 12-3 at 14.) On March 12, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision on October 7, 2021, making the ALJ's decision the Commissioner's final decision. On December 1, 2021, Plaintiff sought review by this Court. (Doc. 1.)

**DISCUSSION**

**I.      Legal Standard**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Claims that are not actually argued in an appellant's opening brief are not considered on appeal. *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Only issues that are argued specifically and distinctly in a party's opening brief are reviewed. *Id.* Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v.*

*Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is highly deferential." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

Harmless error principles apply in the Social Security Act context. *Molina*, 674 F.3d at 1115. An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate non-disability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## II.     Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether

the claimant is capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on her residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and that she has not engaged in substantial gainful activity since September 30, 2014. (Doc. 12-4 at 8.) At step two, the ALJ found that Plaintiff has the following severe impairments: cervical degenerative disc disease, fibromyalgia, generalized convulsive epilepsy, migraines, and dystonia. (Doc. 12-4 at 9.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 12-4 at 10.)

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. Plaintiff can frequently balance, but never climb ladders, ropes, or scaffolds and must avoid concentrated exposure to fumes, odors, dusts, gasses, and hazards. (Doc. 12-4 at 11.)

The ALJ further found that Plaintiff is capable of performing past relevant work as a Dental Assistant. The work does not require the performance of work-related activities precluded by her residual functional capacity. (Doc. 12-4 at 14.) At step five, the ALJ concluded that, even if Plaintiff could not perform past relevant work, considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Doc 12-3 at 26.)

/ / /

/ / /

### III. Analysis

#### A. Plaintiff's Symptom Testimony

##### 1. Legal Standard

The ALJ's decision to reject Plaintiff's symptom testimony is supported by substantial evidence. In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and if so, absent evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To ensure meaningful review, the ALJ must specifically identify the testimony from a claimant the ALJ finds not credible and explain what evidence undermines the testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "General findings are insufficient." *Id.* The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.* Further, the claimant is not required

to produce objective medical evidence of the symptom or its severity. *Garrison*, 759 F.3d at 1014.

### 2. ALJ's Findings

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (AR at 20.) Nevertheless, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ offered several reasons for this conclusion. First, the ALJ determined that "her allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (*Id.*) Next, he determined that "it is difficult to attribute [the alleged] degree of limitation to the claimant's medical condition, as opposed to other reasons in view of the relatively limited medical evidence for the period at issue and generally mild or normal examination findings." (*Id.*) Lastly, the ALJ found Plaintiff's "reported limited daily activities are considered to be outweighed by objective medical evidence." (*Id.*)

Because Plaintiff's insured status expired in December 2019, the ALJ emphasized that a challenge in the case was the "relatively small adjudicatory window" between September 23, 2019, and December 31, 2019. (*Id.*) The ALJ explained that several examinations, in and outside of the time relevant time frame, were all normal, including of gait and posture, conversational movements, neurologic exams, coordination, mental status, range of motion, and muscle weakness. He acknowledged that Plaintiff responded to fibromyalgia tender points and showed upper cervical and midthoracic spasm. He further acknowledged that Plaintiff had a history of migraines but assessed that they were reasonably controlled with Botox during the relevant period. The ALJ compared Plaintiff's testimony to the medical evidence, finding that there was no objective medical evidence that she needed to lay down frequently, as she testified (two hours during the day).

### 3. Analysis

At the outset, the ALJ's reasoning that Plaintiff's daily activities could not be objectively verified is not sufficient to discredit her testimony. As another court has noted, "simply because a fact cannot be verified objectively provides little evidence to support the conclusion that the individual is not being truthful about such fact in any particular instance." *McKim v. Astrue*, No. 11cv5815, 2012 WL 5250096, at *4 (W.D. Wash. Sept. 4, 2012); *see also Baxla v. Colvin*, 45 F. Supp. 3d 1116, 11218 (D. Ariz. 2014), *aff'd in part rev'd in part on other grounds*, 671 F. App'x 477 (9th Cir. 2016). Thus, the inability to confirm the truthfulness of Plaintiff's symptom testimony does not in and of itself provide a specific, clear, and convincing reason for the rejection.

Next, the ALJ's determination that "it is difficult to attribute [the] degree of limitation to the claimant's medical condition, as opposed to other reasons," is also insufficient to discredit Plaintiff's testimony because the ALJ does not offer any specific "other reasons" to which the limitations could be attributed. (AR at 20.) Especially in light of the ALJ's finding that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, the ALJ provided no reasonable "other reasons" that would account for the severity of Plaintiff's symptoms. Typically, when an ALJ finds that other reasons could contribute to the degree of Plaintiff's symptoms, he or she will provide additional evidence from the record suggesting another reason. *See, e.g.*, *Baxla*, 45 F. Supp. 3d at 1128 (stating that based on the conflicting testimony about Plaintiff's daily activities, "Plaintiff's restriction of her daily activities may have been a lifestyle choice"). Alternatively, the ALJ will point to a "specific contradiction between plaintiff's other testimony and her activities of daily living." *See Larson v. Colvin*, 2013 WL 6840423, at *7 (E.D. Cal. Dec. 27, 2013) (finding Plaintiff not credible because of Plaintiff's statements on her Adult Function Report and Plaintiff's mother's statements were inconsistent with Plaintiff's hearing testimony). Here, the ALJ pointed to no such inconsistency and did not suggest any alternative source for the severity of Plaintiff's symptoms. Thus, this was not a sufficient basis to find Plaintiff uncredible.

Nevertheless, the ALJ's determination that the objective medical evidence does not support the severity of Plaintiff's symptom testimony is supported by substantial evidence. When rejecting symptom testimony, the ALJ is required to "specifically identify the testimony from a claimant she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102. The ALJ's review of the medical evidence was sufficiently specific to meet that standard. The ALJ summarized Plaintiff's testimony and then reviewed the medical evidence regarding Plaintiff's impairments, highlighting areas in which the medical evidence showed a normal or mild evaluation. While he did not isolate discrete portions of Plaintiff's symptom testimony that he found uncredible, his review of the medical evidence makes sufficiently clear which aspects of the symptom testimony the medical records undermine. The Court highlights examples below.

*Fibromyalgia:* The ALJ explained that although the claimant responded to 18 of 18 fibromyalgia tender points, she retained an intact range of motion of the wrists, elbows, and shoulders. Plaintiff testified that she had pain in her hands, trouble using her hands, and difficulty holding things and performing fine manipulations. (AR at 20.) Although the medical record shows that Plaintiff responded to the tender points, the fact that she retained a full range of motion in her hands, that she had no objective muscle weakness and that she had no neurologic deficits can reasonably be considered inconsistent with her testimony that she had difficulty holding things and trouble using her hands. Thus, although the ALJ did not explicitly explain that inconsistency, highlighting both Plaintiff's testimony and the medical evidence that is inconsistent with the testimony is sufficiently clear and specific to meet the substantial evidence standard.

*Chronic Migraine:* The ALJ found "there is no significant medical evidence that the claimant's migraines are not reasonably controlled with Botox" because the record "generally shows the claimant's headaches tended to worsen when Botox was wearing off." (AR at 21.) Plaintiff asserts that this conclusion is erroneous because her migraine was not reasonably controlled by Botox. When evaluating the ALJ's decision, however, the

relevant question is whether the ALJ's finding that the objective medical evidence does not support the severity of symptoms to the extent to which Plaintiff testified having such symptoms is supported by substantial evidence.

Even if Plaintiff is correct that the migraines were not fully controlled with Botox, the medical records concerning the Botox treatment at least undermine the severity of Plaintiff's symptoms. Plaintiff testified to being in "constant pain," "having worsening migraines about once a week that last about 24 hours," and having "underlying headaches every day." (AR at 20.) While the medical records make clear that Plaintiff experienced headaches and migraines during the relevant timeframe, it is not clear that, when accounting for the Botox treatment, her symptoms were as severe as she testified. The ALJ cited to several records demonstrating that the Botox reduced or eliminated Plaintiff's headache for some period of time. For example, he cited to one record from July 2019, which stated "[t]he Botox is wearing off. The headache is returning." (AR at 436.) Additionally, he cited to records stating, "the Botox has worn off. Her headaches crescendo," and "[h]eadaches have been getting worse as the Botox wears off." (AR at 457, 520.) Even when the headache was present, the records indicate that the Botox reduced the frequency of migraines and intensity of headaches. (AR at 457, 520, 569.) Plaintiff's neurologist recognized that with Botox, Plaintiff still suffered a daily headache, "just less intense." (AR at 569.) To be sure, these records do not indicate that Botox cured Plaintiff or that Plaintiff was pain free. They do, however, highlight that around the relevant timeframe, Plaintiff was experiencing at least some periods of relief during which the headaches subsided or lessened. At the hearing, however, she testified that her migraines were getting worse and occurring once a week for about 24-hours. (AR at 71-73.) As noted above, the medical records indicate, at the very least, that the intensity with which she described her migraines were lessened from the Botox, and the frequency was somewhat diminished when she received the Botox. Plaintiff's symptom testimony about her migraines, however, did not appear to account for that relief. Therefore, the ALJ's

conclusion that Plaintiff's pain testimony was not entirely consistent with the medical record is supported by substantial evidence.

### B. Weight of Dr. Fechtel's Opinion

#### 1. Legal Standard

The ALJ's finding that the opinion of Plaintiff's treating physician, Dr. Fechtel, is unpersuasive is supported by substantial evidence. Under the most updated regulations, the ALJ is not required to defer to or give controlling weight to any particular medical opinion, including that of Plaintiff's treating medical source. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must articulate how he considered the medical opinions using certain factors, as appropriate. According to the regulations, the most important factors are: supportability, i.e., how relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions, and consistency, i.e., how consistent the medical opinion is with evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he considered other factors such as relationship with the claimant, specialization, and any other factors that tend to support or contradict the medical opinion. *Id.*

The agency's revised regulations have abrogated the requirement that an ALJ provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022). The Ninth Circuit has stated that the regulations clearly displace the specific and legitimate standard, and instead the "decision to discredit any medical opinion . . . must simply be supported by substantial evidence." *Id.* at 787. Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). Additionally, if the evidence is "susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

### 2.     ALJ's Findings

The ALJ found Plaintiff's treating physician's opinion unpersuasive because "the degree of limitations proposed is not supported by his own treatment records." (AR at 22.) Dr. Fechtel opined that Plaintiff had moderately severe limitations from pain and fatigue and she would miss over five days a month of work due to her conditions. (AR at 553-54.) He further opined that these limitations were present as of May 23, 2019, as a result of chronic migraine, epilepsy, and insomnia. (*Id.*) The ALJ recognized that at times, Dr. Fechtel's notes indicated Plaintiff had issues with headaches and she had difficulty sleeping, but other times the notes indicated that Plaintiff's headaches were stable, and she indicated no trouble sleeping. (AR at 22.) The ALJ also pointed to the most recent reference to Plaintiff's seizures in Dr. Fechtel's notes, which was in March 2019, and reflected that Plaintiff suffered no recent seizures. (*Id.*) Neurologic exams were frequently considered "normal," and she continued to present full musculoskeletal strengths, normal cranial nerves, and normal fundamental knowledge and concentration. (*Id.*) Based on the normal, manageable, or waxing and waning state of several of Plaintiff's chief complaints, the ALJ determined that the significant degree of limitations proposed by Dr. Fechtel was not supported in his notes.

### 3.     Analysis

In this appeal, Plaintiff primarily challenges the ALJ's reliance on Dr. Fechtel's statements that her headache was stable or responded to Botox, asserting that "a condition can be stable but disabling." *Petty v. Astrue*, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008). While this is true, the ALJ did not rely exclusively on the statement that Plaintiff's headaches were stable at one appointment to find that Dr. Fechtel's notes did not support the limitations. Instead, the ALJ pointed to several objective medical findings, including that her headaches were considered "waxing and waning" and she had "no recent seizures" in March 2019. Although March 2019 is outside the relevant timeframe, Dr. Fechtel's notes do not indicate when, if at all, Plaintiff had a seizure during the relevant time. Thus, his assessment that her daily activities were partially limited by epilepsy appear

unsupported by his records. Additionally, immediately before the alleged onset of Plaintiff's disability, his notes stated that her headaches were stable. (AR at 22.) Thus, the collection of notes that the ALJ highlighted could reasonably demonstrate that Dr. Fechtel's notes do not support the severity of limitations which he opined Plaintiff required.

The majority of the ALJ's opinion concerned the supportability of Dr. Fechtel's opinion. It is unclear to what extent the ALJ addressed consistency with other physicians, as required by the regulations. *See* 20 C.F.R. § 404.1520c(b)(2). At minimum, the ALJ contrasted the limitations posed by Dr. Fechtel and the state agency physicians. He further determined that the state agency determinations were persuasive because the objective examinations did not support greater restrictions. (AR at 23.) While the ALJ could have been more specific in his analysis of the agency opinions and their consistency with Dr. Fechtel, the opinion demonstrates the inconsistencies between by listing each of their proposed limitations and finding that the state agency determinations were more supported by objective examination. In any event, the Ninth Circuit has recently affirmed an ALJ's opinion which only considered the consistency factor, suggesting that it is not reversible error to fail to consider both factors. *Woods*, 32 F.4th at 793 n.4. The determination as to Dr. Fechtel's persuasiveness therefore remains reasonable.

### C. Non-Severity of Plaintiff's Rheumatoid Arthritis

The ALJ's determination that Plaintiff's rheumatoid arthritis is not a severe impairment is supported by substantial evidence. For an impairment to be considered severe, it must "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Plaintiff has the burden of proving that her impairment is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff alleges that the ALJ ignored that her hands showed signs of rheumatoid arthritis at every doctor's visit. The ALJ did not ignore these doctor's visits; however, he found that in spite of the rheumatoid arthritis diagnosis, the record contained "insufficient evidence to support that the claimant's rheumatoid arthritis significantly limits her ability to perform basic work activity." (Doc. 12-3 at 17.) The ALJ noted that Plaintiff only had

two rheumatology visits during the relevant disability timeframe. On both of those visits, Plaintiff showed fibromyalgia tender points and mild swelling of the joints of her hands. Remaining objective examinations were normal, including intact range of motion of wrists, elbows, and shoulders, no objective muscle weakness, and no neurologic deficits. Thus, because the examinations during the relevant period exhibited only minor swelling, the ALJ found that Plaintiff did not meet her burden to demonstrate a severe impairment for the rheumatoid arthritis.

The ALJ's reasoning meets the substantial evidence standard. Although he accepted that Plaintiff was diagnosed with rheumatoid arthritis, it is reasonable to determine that the mild swelling of the joints would not significantly limit Plaintiff's ability to do basic work activities. Plaintiff cites to her hearing testimony at which she stated she had difficulty with manipulations and holding onto objects; however, it is not clear that those difficulties existed by the date last insured. Thus, the only objective evidence the ALJ relied on for Plaintiff's rheumatoid arthritis symptoms was her two rheumatology visits, which indicated mild swelling and joint pain. Additionally, the fact that Plaintiff completed a trial of biologic medications with potentially severe side effects does not render her impairment severe. Plaintiff did not testify to any severe side effects from the treatment, and it is does not appear that the ALJ was presented with evidence as to the severity of the side effects of Humira treatment. Thus, his failure to consider whether completing the Humira trial rendered the rheumatoid arthritis severe was reasonable.

With a limited record pertaining to Plaintiff's rheumatoid arthritis during the relevant time, it was reasonable to conclude that the arthritis was not a severe impairment. Even if the ALJ considered Plaintiff's February 2020 rheumatology visit, although her pain was increasing, (AR at 530), her joint swelling appeared mild, and the visit notes indicate minimal changes from the previous visit in November, (AR at 537). Thus, the objective medical evidence reasonably supports the conclusion that Plaintiff's rheumatoid arthritis did not constitute a severe impairment.

**CONCLUSION**

Accordingly,

**IT IS THEREFORE ORDERED** that the final decision of the ALJ dated March 12, 2021, is **AFFIRMED**. The Clerk of Court is directed to enter final judgment consistent with this Order and to close this case.

Dated this 3rd day of May, 2023.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge